IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



JOTAYNUN LEE, as Administrator
of the estate of
Jataynun Trayvon Fleming,
deceased, as next friend of
J.F., K.F., N.T., N.K., and
J.W., minor children of
Jataynun Trayvon Fleming, deceased,
And Individually,

    Plaintiff,

v.

                          Civil Action No. 3:12cv471

CITY OF RICHMOND, VIRGINIA,
et. al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on defendant City of Richmond's ("the City") MOTION TO DISMISS (Docket No. 49). For the reasons set forth herein, the motion will be granted.

## FACTUAL ALLEGATIONS AND THE PLAINTIFF'S CLAIMS AGAINST THE CITY

At this stage, the Court, as it must, "accept[s] all well-pleaded allegations in the plaintiff's complaint as true and draw[s] all reasonable factual inferences from those facts in the plaintiff's favor," Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). With that in mind, the facts, which are derived from the Amended Complaint (Docket No. 38), are alleged to be as set forth below.

At approximately 3:00 p.m. on July 14, 2010, unidentified officers of the Richmond Police Department ("RPD") arrived at a private residence on Beaufont Hill Drive in Richmond, Virginia and asked to speak to the decedent Jataynun Trayvon Fleming ("Fleming"). The officers were armed and dressed in a manner consistent with that conventionally associated with members of the Richmond SWAT team.

Fleming, who was lawfully inside the residence, retreated to an upstairs bathroom and barricaded himself inside. Also present in the residence was Fleming's son and his son's mother, who were escorted outside by RPD personnel. Fleming's father, the plaintiff Jotaynun Lee ("Lee") arrived at the residence and informed the officers that Fleming did not have a firearm. And, indeed, it turned out that Fleming did not have a firearm in the bathroom or elsewhere inside the residence. Lee requested that the RPD officers, including defendants Bevington and Moore, allow him to enter the residence and convince Fleming to surrender peacefully; Lee was not allowed to do so.

Instead, at approximately 7:00 p.m., the RPD officers threw a "tear gas canister" into the bathroom where Fleming had barricaded himself. Approximately two minutes later, Fleming came out of the bathroom while exhibiting symptoms common to exposure to tear gas (such as coughing and stumbling). Fleming fell to the floor outside the bathroom. At that point, Bevington

and Moore fired a total of nine rounds at Fleming, who was struck multiple times in his sides, torso, and chest. Fleming subsequently died. A forensic investigation revealed several bullet holes in the floor near the body, but no bullet holes in the walls.

In response to questions from RPD investigators, Bevington and Moore claimed that Fleming had emerged from the bathroom, with his arms extended, and brandishing a weapon towards the officers. Moore reported that he had fired one round at Fleming while Fleming was standing and that, when Fleming failed to comply with verbal commands, additional rounds were fired. Bevington reported that he had only fired at Fleming while Fleming was standing and stopped firing after Fleming fell to the floor. Bevington subsequently claimed that he had, in fact, fired at Fleming again when it appeared that Fleming was attempting to stand up. There was no firearm recovered from Fleming's person or the residence.

In the Amended Complaint, Lee asserts three claims, all under 42 U.S.C. § 1983. In Count I, Lee has sued Officers Bevington and Moore for an unlawful use of force in violation of the Fourth Amendment to the United States Constitution. In Count II, Lee presents three claims against the City: negligent hiring of the police officers (Amended Compl. ¶ 3), failing adequately to train and supervise the officers (Amended Compl.

3

¶ 64), and conducting a "very poor investigation" of the event (Amended Compl. ¶ 67), all of which are said to be a violation of substantive due process rights conferred by the Fifth and Fourteenth Amendments.  In Count III, Lee incorporates all preceding allegations and then also alleges, rather vaguely, that all defendants (the officers and the City) somehow caused the decedent to suffer great pain between the time of the shooting and the time of death.  Lee fastens Count III to no particular constitutional provision (Amended Compl. ¶ 74).

## LEGAL STANDARD

The purpose of a motion made pursuant to Fed. R. Civ. P. 12(b)(6) is "to test the legal sufficiency of the complaint." Randall v. United States, 30 F.3d 518, 523 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Twombly, 550 U.S. at 556. A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where they permit a

4

court to infer no more than a possibility of misconduct. See Iqbal, 556 U.S. at 678-79.

Recently, in the context of a § 1983 action, the United States Court of Appeals for the Fourth Circuit reiterated that "the factual allegations in the complaint, viewed as a whole, [must] have facial plausibility that allow the court to draw the reasonable inference that the defendants are liable for misconduct alleged." Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (quoting Iqbal, 556 U.S. at 678). Elaborating upon Twombly, Iqbal instructs that, under Fed. R. Civ. P. 8, "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557); see also Tobey, 706 F.3d at 387-88. As the Fourth Circuit has recognized, while civil rights claims "are not subject to a heightened pleading standard, . . . [all] claims brought in federal court are . . . subject to the generally applicable standards set forth in the Supreme Court's entire Rule 8(a) jurisprudence, including Twombly and Iqbal." Cook v. Howard, 484 F. App'x. 805, 810 (4th Cir. 2012) (unpublished per curiam opinion).

5

## DISCUSSION

The Ku Klux Klan Act of 1871, the federal civil rights statute at issue, states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983; see generally Monroe v. Pape, 365 U.S. 167 (1961). It is critical to remember that § 1983 is not itself a source of substantive rights; rather, it provides a method for vindicating federal rights elsewhere conferred. Albright v. Oliver, 510 U.S. 266, 271 (1994). Hence, to establish liability, "a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's constitutional or statutory rights, and thereby caused the complained of injury." Brown v. Mitchell, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004).

Even the most cursory examination of the Amended Complaint illustrates that Lee has alleged a legally sufficient § 1983 Fourth Amendment claim, for excessive and deadly force, against Officers Bevington and Moore. However, even though cities are "person[s]" amenable to suit under § 1983, municipal liability

6

may not be predicated upon a theory of vicarious liability or respondeat superior. Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 694 (1978). Instead, Monell directs that municipal liability under § 1983 arises only where the municipality, qua municipality, has undertaken an official policy or custom that causes an unconstitutional deprivation of the plaintiff's rights. Id.; see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Pembaur v. City of Cincinnati, 475 U.S. 469, 482-84 (1986); Polk County v. Dodson, 454 U.S. 312, 325 (1981); Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987). Significantly, our Court of Appeals has emphasized "the requirement of a close fit between the unconstitutional policy and the constitutional violation." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

The purpose of this requirement is threefold: (1) "it helps to ensure that a municipality has made a deliberate choice to follow a course of action from among various alternatives"; (2) "it assures that this choice was in fact the 'moving force' behind a deprivation of federal rights"; and (3) "by requiring litigants to identify the offending municipal policy with precision, courts can prevent trials from straying off into collateral accusations of marginally related incidents." Id. at 218-19. Thus, assuming that Officers Bevington and Moore in fact

violated Fleming's rights, that fact, standing alone, is insufficient to establish a § 1983 claim against the City.

The Amended Complaint bases its claim of municipal liability in Count II on a "negligent hiring" theory, a "failure to train" theory, and an "inadequate investigation" theory. As to the negligent hiring claim, the Amended Complaint asserts that the City "failed to exercise due care and caution in its hiring practices, and in particular, hiring [officers] who lacked the mental capacity and ability to function as SWAT team members" by failing to investigate the officers' backgrounds and by retaining the officers once it became clear that they were "careless, negligent, and reckless." (Amended Compl. ¶ 63). The failure to train claim is founded on the allegations that the City "failed to adequately train and supervise its police officers . . . in the proper use of force, particularly deadly force, when confronted with the kind of standoff situation presented" in this case. (Id. at ¶ 64). Finally, the failure to adequately investigate claim is that the City "caused a very poor investigation of this shooting." (Id. at ¶ 68-71). The City has moved to dismiss all theories of liability and they will be considered in turn.

**Negligent Hiring**

Although recognizing that negligent hiring, or "inadequate screening," could form the basis of municipal liability, the

8

Supreme Court has warned that such cases present "a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself." Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997). After all,

> [e]very injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

Id. Thus, a municipality can face liability on this theory only if there is a showing that the municipality's hiring decision reflected a "conscious disregard for a high risk that [the employee] would" violate the plaintiff's federally protected rights. Id. at 415. This high bar is met only where "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." Id. at 411. As the Fourth Circuit has noted, while Bryan County suggests that municipality liability under § 1983 "can be based on even a single hiring decision," such a claim "is only viable if [the City] was deliberately indifferent towards how its hiring

9

decision could lead to a deprivation of federal rights. The standard is a high one." Jones v. Mullins Police Dept., 355 F. App'x. 742, 747 (4th Cir. 2009) (unpublished per curiam opinion) (citations omitted).

In support of his claim of negligent hiring, Lee alleges that the individual officers "lacked the mental capacity and ability to function as SWAT team members" and that the City "failed to exercise due care and caution in its hiring practices" by hiring the mentally incapable defendants. (Amended Compl. ¶ 63).[1] Relatedly, Lee asserts that the City failed to investigate the officers' background.

The City's motion to dismiss fails to draw a distinction between the negligent hiring and the inadequate training theories, but moves to dismiss them for failing to comply with the mandate of Twombly and Iqbal that a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. In response, the plaintiff relies on Erickson v. Pardus, 551 U.S. 89, 93 (2007),[2] for the proposition that, under Fed. R. Civ.

---

[1] Unlike Lee's claims for "inadequate training" or "poor investigation," he does not specifically allege a causal link between the negligent hiring and the deprivation of Fleming's constitutional rights.

[2] Erickson dealt with a petitioner who had "been proceeding, from the litigation's outset, without counsel." Id. at 94. That decision specifically indicated that "a pro se complaint,

P. 8, "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Lee also places substantial reliance on Conley v. Gibson, 355 U.S. 41, 47 (1957) for the proposition that Rule 8 does not require the allegation of specific facts and, instead, merely requires sufficient information to give the defendants "fair notice" of the claim.

Curiously, the plaintiff fails to cite, or even acknowledge, Twombly and Iqbal, which "require more specificity from complaints in federal civil cases than was [previously] the case." Robertson v. Sea Pines Real Estate Companies, Inc., 679 F.3d 278, 288 (4th Cir. 2012). Indeed, Lee does not cite or rely on a single decision that was issued after Twombly and Iqbal were decided. Contrary to Lee's assertions, contemporary federal pleadings require more than mere notice; indeed, courts must "consider the factual allegations of the complaint to determine whether they plausibly show an entitlement to relief." Glassman v. Arlington Cnty., 628 F.3d 140, 145 (4th Cir. 2010) (emphasis in original). Further, courts never have been required to "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). There

---

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. Here, while Lee filed the present action pro se, the Amended Complaint was filed by counsel and may be held to the standards for pleadings "drafted by lawyers."

is nothing to suggest that there is a reduced pleading requirement for civil rights actions, indeed Iqbal itself was a Bivens action.

In support of the legal conclusion that the City failed to exercise due care in hiring the individual defendant officers, Lee alleges principally that the officers "lacked the mental capacity and ability to function as SWAT team members." (Amended Compl. ¶ 63). This does not even rise to the level of a "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, much less allege sufficient facts to make the claim "plausible on its face." Id. at 570. The assertion that the City failed to investigate the backgrounds of the officers is more specific but is of no import because the Amended Complaint never asserts that there was any event in the officers' past conduct that would have made hiring a constitutionally deficient decision. Nor does the Amended Complaint allege a pattern or practice in the hiring area that would give rise to any municipal liability.

Accordingly, the Court concludes that the Amended Complaint fails to state a claim against the City for negligent hiring.

### Failure to Train

The Supreme Court has recognized that "inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the

rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). As the Court noted, where a plaintiff seeks to impose liability on the municipality, the issue is "whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" Id. at 390. The Court instructed that "[i]n resolving the issue of a city's liability, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Id. at 390-91. Even beyond identifying an inadequate training program,

> [T]he identified deficiency in a city's training program must be closely related to the ultimate injury. Thus in the case at hand, respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs. Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect? Predicting how a hypothetically well-trained officer would have acted under the circumstances may not be an easy task for the factfinder, particularly since matters of judgment may be involved, and since officers who are well trained are not free from error and perhaps might react very much like the untrained

13

> officer in similar circumstances. But judge
> and jury, doing their respective jobs, will
> be adequate to the task.

Id. at 391. As the Supreme Court cautioned, "to adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, [the plaintiff] will be able to point to something the city 'could have done' to prevent the unfortunate incident." Id. at 391-92. While a failure to adequately train its employees about "their legal duty to avoid violating citizens' rights may rise to the level of an official government policy," the Supreme Court has warned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

The Fourth Circuit has instructed that, in a failure to train case, "[i]solated, unprecedented incidents . . . are insufficient to create municipal liability." Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000). Indeed, "a single police officer may grossly, outrageously, and recklessly misbehave in the course of a single incident." City of Oklahoma City v. Tuttle, 471 U.S. 808, 830 (1985) (Brennan, J., concurring). However, to impose municipal liability, there must be some showing that "such misbehavior may . . . be fairly attributable

to various municipal policies or customs," and that it was not "attributable to numerous other factors for which the city may not be responsible; the police officer's own unbalanced mental state is the most obvious example." Id. at 830-31.

To adequately allege a failure to train claim, the plaintiff "need not identify in detail the exact training policies in effect, or lack thereof, at the time of the events in question." Newbrough v. Piedmont Regional Jail Authority, 822 F. Supp. 2d 558, 583 (E.D. Va. 2011). However, the plaintiff must allege facts that "reveal an 'obvious' need for improved personnel training." Id. The most common way to plead a failure to train claim is to allege "a pattern of similar constitutional violations by untrained employees." Tobey v. Napolitano, 808 F. Supp. 2d 830, 842 (E.D. Va. 2011) (quoting Connick, 131 S. Ct. at 1360).

Lee has alleged no facts in support of the failure to train claim. Instead, he avers the conclusions that: (1) the training was inadequate; (Amended Compl. ¶ 64); (2) the inadequate training "constitute[d] deliberate indifference" (Id. at ¶ 65); and (3) the "risk of constitutional injury as a result of such deliberate indifference . . . is very obvious." (Id. at ¶ 66). Those, of course, are the exact type of "labels and conclusions and a formulaic recitation of the elements of a cause of action" that Twombly says "will not do." 550 U.S. at 555. Lee argues,

15

principally relying on the since-abrogated decision in Conley, that it is sufficient merely to allege that the training was inadequate and that said inadequacy constitutes deliberate indifference. See Pl. Br. in Opp. at 7. The Court disagrees. While Lee has plainly alleged sufficient facts to suggest that the individual officers violated Fleming's federally protected rights, he has not alleged any, much less sufficient, facts to render "plausible" a claim that this violation was either part of a "pattern of unconstitutional conduct" by City employees or that the "violation of a federal right [was] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Hill v. Robeson Cnty., 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010). Rather, Lee has alleged, at best, that the City did not train these particular officers to deal with this particular situation in this particular instance. If that were sufficient to state a claim for municipal liability, it would functionally expose the City to respondeat superior liability, which has been explicitly foreclosed by Monell. Accordingly, the Court finds that the plaintiff has failed to adequately allege a claim for municipal liability on a "failure to train" theory.

**Inadequate Investigation**

Lee's third basis for a § 1983 claim against the City arises out of the post-shooting investigation. He alleges, in essence, that the police chief conducted a "very poor investigation" of the death of Fleming; that the police chief had a history of conducting poor investigations; that the City of was aware of its police chief's history of inadequacy; and that such investigations "embolden[] officers like Bevington and Moore to violate the constitutional rights of citizens like the decedent with impunity." Amended Compl. ¶¶ 67-70. Given the most generous construction, Lee alleges, in effect, that the City's knowledge of shoddy investigations into police misconduct, and its failure to remedy the situation, constitutes an official policy of covering up police misconduct, and the knowledge that the City would cover up the misconduct caused Fleming's constitutional rights to be violated by the officers. In essence, the plaintiff argues that the inadequate investigations constitute an "official policy [that] can be inferred from a municipality's omissions" and that constitute "tacit authorization of or deliberate indifference to constitutional injuries." Wellington v. Daniels, 707 F. 2d 932, 935-36 (4th Cir. 1983) (internal quotation omitted). Courts to have considered the question have regularly found that municipalities can be held liable under Monell when it is shown "that the

17

municipalities and their officials ignored police misconduct." Mettler v. Whitledge, 165 F.3d 1197, 1205 (8th Cir. 1999); see also McKnight v. District of Columbia, 412 F. Supp. 2d 127, 133 (D.D.C. 2006) ("A municipality may be liable under § 1983 for its failure to investigate incidents of force, and by extension, its failure to discipline officers for use of excessive force, when such failure amounts to deliberate indifference to the constitutional rights of persons within its jurisdiction.").

The City argues that Lee has failed to allege sufficient iterations of inadequate investigation to allow the inference that the City had knowledge of it. Mem. in Supp. at 10. More specifically, the City says that Lee "alleges no other police shooting investigations which would demonstrate a persistent and widespread custom and policy of less than thorough police shooting investigations." Id. at 10-11.

The Court must accept all factual allegations as true, but need not accept as true "a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. The only factual allegation that Lee makes respecting the investigation is that the Richmond police chief "was widely reported in the press justifying the shooting." Amended Compl. ¶ 68.[3] Curiously, Lee

---

[3] The plaintiff also alleges knowledge by the City of the police chief's "cavalier attitude toward proper investigation." (Amended Compl. ¶ 69). Of course, "knowledge and intent may be pleaded generally (which is to say, in a conclusory fashion)."

does <u>not</u> allege that the police chief is one "whose edicts or acts may fairly be said to represent official policy." <u>Monnell</u>, 436 U.S. at 694. Rather, in Lee's theory, the police chief is just another inadequate employee of the City who, apparently, had been directed by some decision-maker to conduct a "very poor investigation of [the] shooting." (Amended Compl. ¶ 67). This sort of conclusory allegation, without any facts alleged in support, against an individual officer's supervisors is exactly the sort of pleading that <u>Iqbal</u> rejected.

Indeed, even if Lee were deemed to have pled that the police chief was an official whose failure to act could be fairly attributed to the City, the claim still fails. It is well-settled that, in a failure to investigate case, municipal liability cannot be predicated on a single incident. <u>Byrd v. District of Columbia</u>, 297 F. Supp. 2d 136, 139 (D.D.C. 2003) (citing <u>Tuttle</u>, 471 U.S. at 823-24). Here, Lee alleges that the City "had notice that, prior to [this shooting], investigation of police shootings of civilian suspects by its police department had been less than thorough," Amended. Compl. ¶ 69, but he alleges no fact in support of this conclusion. Indeed, even if this paragraph was viewed as alleging a fact, mere awareness by the City of some prior instances of inadequate

---

<u>Burks v. Raemisch</u>, 555 F.3d 592, 594 (7th Cir. 2009); <u>see also</u> Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

violations may suggest negligence, but does not rise to the level of suggesting a "'deliberate' or 'conscious' choice by a municipality," which is the standard required. Canton, 489 U.S. at 389. For example, Canton suggests that municipal liability, in a failure to train case, might arise where "the police . . . so often violate constitutional rights that the need for further training must have been plainly obvious, to the city policymakers who, nevertheless, are 'deliberately indifferent' to the need." 489 U.S. at 390 n.10. A similar standard is appropriate in an inadequate investigation claim.

Lee has failed to plead the existence of an official policy that led to a constitutional deprivation or sufficient iterations of inadequate investigation of police misconduct to constitute "deliberate indifference" by the City. Rather, he relies on "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678. Such a claim "will not do." Id. The Amended Complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Such facts are lacking here.

Accordingly, the Court concludes that Lee has failed sufficiently to allege facts that would permit him to recover against the City for its alleged approval of inadequate police investigations.

## Count III

In Count III, Lee seeks damages from the City for the decedent's pre-death suffering. The count is captioned in terms of the relief it seeks, not in terms of the legal predicate for the relief, except to assert that Count III is pressed under § 1983. In the briefing, Lee appears to concede that Count III is not actually a cognizable claim on its own right, but instead, is intended to identify a specie of damages (i.e., pre-death pain and suffering).

Even if Count III somehow could be construed to be a claim on its own, it would fail. Whatever else can be said about Count III, it is clear that Lee bases this claim on the same theories that animate Count II because paragraph 73 of the Amended Complaint re-alleges all previous paragraphs and that would include the same theories pressed in Count II. Thus, Count III, if intended as an independent claim, would fail for the reasons that render Count II legally insufficient.

### CONCLUSION

For the reasons set forth above, defendant City of Richmond's MOTION TO DISMISS (Docket No. 49) will be granted. The plaintiff previously was afforded leave to file an amended complaint and did nothing to cure the defects in the claims against the City. Hence, any further amendment would be futile.

21

Therefore, the case against the City as set out in Counts II and III will be dismissed with prejudice.

It is so ORDERED.

                              /s/          REP
                         Robert E. Payne
                         Senior United States District Judge


Richmond, Virginia
Date:  March 19, 2013