IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



JOTAYNUN LEE, as Administrator
of the estate of Jataynun Trayvon Fleming,
deceased, as next friend of J.F., K.F.,
N.T., N.K., and J.W., minor children of
Jataynun Trayvon Fleming, deceased, and
Individually,

     Plaintiff,

v.                                Civil Action No. 3:12cv471

CITY OF RICHMOND, VIRGINIA, et. al.,

     Defendants.

### MEMORANDUM OPINION

This matter is before the Court on defendant Wesley Moore's ("Moore") and defendant Todd James Bevington's ("Bevington") MOTIONS TO DISMISS AMENDED COMPLAINT (Docket No. 46, 54). For the reasons set forth herein, the motions are granted.

### FACTUAL ALLEGATIONS AND
### THE CLAIMS AGAINST THE INDIVIDUAL OFFICERS

At this stage, the Court, as it must, "accept[s] all well-pleaded allegations in the plaintiff's complaint as true and draw[s] all reasonable factual inferences from those facts in the plaintiff's favor," Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). With that in mind, the facts, which are derived from the Amended Complaint (Docket No. 38), are alleged to be as set forth below.

At approximately 3:00 p.m. on July 14, 2010, unidentified officers of the Richmond Police Department ("RPD") arrived at a private residence on Beaufont Hill Drive in Richmond, Virginia and asked to speak to the decedent Jataynun Trayvon Fleming ("Fleming"). The officers were armed and dressed in a manner consistent with that conventionally associated with members of the Richmond SWAT team.

Fleming, who was lawfully inside the residence, retreated to an upstairs bathroom and barricaded himself inside. Also present in the residence was Fleming's son and his son's mother, who were escorted outside by RPD personnel. Fleming's father, the plaintiff Jotaynun Lee ("Lee") arrived at the residence and informed the officers that Fleming did not have a firearm. And, indeed, it turned out that Fleming did not have a firearm in the bathroom or elsewhere inside the residence. Lee requested that the RPD officers, including defendants Bevington and Moore, allow him to enter the residence and convince Fleming to surrender peacefully; Lee was not allowed to do so.

Instead, at approximately 7:00 p.m., the RPD officers threw a "tear gas canister" into the bathroom where Fleming had barricaded himself. Approximately two minutes later, Fleming came out of the bathroom while exhibiting symptoms common to exposure to tear gas (such as coughing and stumbling). Fleming fell to the floor outside the bathroom. At that point, Bevington

2

and Moore fired a total of nine rounds at Fleming, who was struck multiple times in his sides, torso, and chest. Fleming subsequently died. A forensic investigation revealed several bullet holes in the floor near the body, but no bullet holes in the walls.

In response to questions from RPD investigators, Bevington and Moore claimed that Fleming had emerged from the bathroom, with his arms extended, and brandishing a weapon towards the officers. Moore reported that he had fired one round at Fleming while Fleming was standing and that, when Fleming failed to comply with verbal commands, additional rounds were fired. Bevington reported that he had only fired at Fleming while Fleming was standing and stopped firing after Fleming fell to the floor. Bevington subsequently claimed that he had, in fact, fired at Fleming again when it appeared that Fleming was attempting to stand up. There was no firearm recovered from Fleming's person or the residence.

In the Amended Complaint (Docket No. 38), Lee asserts three claims, all under 42 U.S.C. § 1983. In Count I, Lee alleges a claim against Officers Bevington and Moore for an unlawful use of deadly force in violation of the Fourth Amendment of the Unites States Constitution. In Count II, which is headed "substantive due process," Lee asserts three claims against the

3

City of Richmond alleging a theories of municipal liability,[1] as well as a claim against the individual officers, on behalf of Lee individually and in his capacity as next friend to Fleming's minor children, alleging deprivation of their liberty interests in Fleming's "companionship, care, custody, and management," in violation of their rights under the Fifth and Fourteenth Amendments of the United States Constitution. In Count III, Lee incorporates all preceding allegations and then also alleges, rather vaguely, that all defendants (the officers and the City) somehow caused the decedent to suffer great pain between the time of the shooting and the time of death. Lee fastens Count III to no particular constitutional provision (Amended Compl. ¶ 74).

## LEGAL STANDARD

The purpose of a motion made pursuant to Fed. R. Civ. P. 12(b)(6) is "to test the legal sufficiency of the complaint." Randall v. United States, 30 F.3d 518, 523 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is "plausible" when the plaintiff

---

[1] Lee's claims against the City were dismissed, with prejudice, by the Court's Order dated March 19, 2013 (Docket No. 78) for the reasons in the Memorandum Opinion (Docket No. 77).

4

pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. <u>Twombly</u>, 550 U.S. at 556. A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where they permit a court to infer no more than a possibility of misconduct. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678-79.

Recently, in the context of a § 1983 action, the United States Court of Appeals for the Fourth Circuit reiterated that "the factual allegations in the complaint, viewed as a whole, [must] have facial plausibility that allow the court to draw the reasonable inference that the defendants are liable for misconduct alleged." <u>Tobey v. Jones</u>, 706 F.3d 379, 387 (4th Cir. 2013) (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678). Elaborating upon <u>Twombly</u>, <u>Iqbal</u> instructs that, under Fed. R. Civ. P. 8, "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." <u>Iqbal</u>, 556 U.S. at 678 (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 557); <u>see</u> <u>also</u> <u>Tobey</u>, 706 F.3d at 387-88. As the Fourth Circuit has recognized, while civil rights claims "are not subject to a heightened pleading standard, . . . [all] claims brought in federal court are . . . subject to the generally applicable standards set forth in the Supreme Court's entire Rule 8(a)

jurisprudence, including <u>Twombly</u> and <u>Iqbal</u>." <u>Cook v. Howard</u>, 484 F. App'x. 805, 810 (4th Cir. 2012) (unpublished per curiam opinion).

## DISCUSSION

Bevington and Moore concede, as they must, that Count I of the Amended Complaint properly states a claim for relief, under § 1983, for the shooting death of Fleming by Bevington and Moore, acting in their capacities as officers of the Richmond Police Department and under the color of state law, brought on behalf of Fleming by Lee as Administrator of Fleming's estate. Rather, Bevington and Moore challenge the allegations in Count I as to Lee individually and as next friend to Fleming's minor children, as well as the claims in Count II and Count III. <u>See</u> Bevington Mem. in Supp. of Mot. (Docket No. 47) at 2; Moore Br. in Supp. (Docket No. 55) at 1.

<u>Count I</u>

Lee acknowledges that Count I is solely to be construed as a claim brought by him in his capacity as Administrator of Fleming's estate. <u>See</u> Br. in Opp. to Bevington's Mot. at 2 ("In that count [i.e., Count I], plaintiff does not make any claim individually or as the next friend of the decedent's children. Rather, plaintiff sues as the administrator of his son's estate to recover for the constitutional injuries that Bevington inflicted upon his son."); <u>accord</u> Pl. Br. in Opp. to Moore's

Mot. at 4 ("Plaintiff does not sue in his individual capacity or on behalf of Fleming's minor children in Count I."). Neither Moore nor Bevington argue that Lee cannot bring a § 1983 on behalf of Fleming, in Lee's capacity as Administrator of Fleming's estate. Accordingly, the issue appears to be moot. Therefore, to the extent that the Count I can be read to allege a claim on behalf of the plaintiff individually or as next friend to Fleming's minor children, the defendants' motions to dismiss are granted.

## Count II

Count II of the Amended Complaint is largely devoted to Lee's claims against the City of Richmond. As to Moore and Bevington, the entirety of the allegations in this Count is present in a single sentence. Paragraph 61 of the Amended Complaint incorporates the allegations in the preceding paragraphs (i.e., the unlawful use of deadly force claim) and further asserts that,

> By the aforesaid conduct of the defendants, Plaintiff and Plaintiff's Decedent's children herein were deprived of their liberty interest in the companionship, care, custody, and management of Plaintiff's Decedent, in violation of their rights under the Fifth and Fourteenth Amendment.

(Amended Compl. ¶ 62). The remaining allegations in Count II are explicitly directed at the City of Richmond.

7

At the Initial Pretrial Conference, held on December 3, 2012, counsel for the plaintiff represented that the substantive due process claim in Count II "has nothing to do with the individuals. It's with the city." (Tr. of Pretrial Conference ("IPTC Tr.") (Docket No. 64) at 27:21-22).[2] Counsel for the plaintiff then confirmed that he intended to state the same in his reply to the defendants' motions to dismiss. (IPTC Tr. at 28:11-13, 28:18-21)(The Court: "So you're going to say that in your response to their motion?" Mr. Okoli: "Yes, sir" . . . The Court: "And Count Two you're going to say is just against the city in your response; is that right?" Mr. Okoli: "Yes, Your Honor."). Notwithstanding those clear admissions respecting the reach of Count II, the plaintiff did not take that course in his response. To the contrary, the plaintiff completely reversed his position and now asserts that Count II _does_ apply to the individual defendants. See Pl. Br. in Opp. to Bevington's Mot. to Dismiss (Docket No. 58) at 8 - 16 (describing theories of recovery against Bevington under Count II); accord Pl. Br. in Opp. to Moore's Mot. to Dismiss (Docket No. 59) at 9-16 (same as to defendant Moore). The plaintiff describes this reversal as

---

[2] The Court clarified: "Count Two goes only to the city?" Counsel responded: "To the city, that's correct." (IPTC Tr. at 28:2-3). The Court proceeded to read the pertinent section of the Amended Complaint out loud and commented that "it sounds like you are laying the claim against Officer Moore and Officer Bevington. But this is just against the city now, right?" (IPTC Tr. at 28:7-9).

"inadvertent error" that does not prejudice the defendants because the fact that they knew to file a motion to dismiss indicates that they had notice of the claim. Pl. Br. in Opp. to Bevington Mot. at 16 n.5.

Lee's briefs in opposition assert four basic theories of recovery under Count II as against the individual defendants: (1) a claim on behalf of Fleming, brought by Lee as Administrator of his Estate, for the violation of his right to due process; (2) a claim by Lee individually arising from the defendants' unconstitutional interference with the "parent-child" relationship between Lee and Fleming; and (3) a claim by Lee, as next friend to the minor children, for the loss of the "companionship" of Fleming.[3]

Lee's first theory plainly fails. First, in Count II, the Amended Complaint simply does not plead a claim against Moore and Bevington on behalf of Fleming himself, or by Lee as Administrator of his Estate. Indeed, the Amended Complaint specifically, and exclusively, asserts a claim on behalf of "Plaintiff and Plaintiff's Decedent's children." (Amended Compl. ¶ 62). Even if Lee did attempt to allege a due process

---

[3] Lee's brief in opposition also goes to length to argue that he can press the claims of Fleming's minor children as their "next friend." Pl. Br. in Opp. at 14-16. This is does not appear to be disputed by the defendants. The motion to dismiss is rather based on the defendants' contention that the minor children have no cognizable § 1983 claims to press.

violation, in his capacity as Administrator, against Moore and Bevington, such a claim is clearly foreclosed by the Supreme Court's decision in Graham v. Connor, 490 U.S. 386, 388 (1989), which held that claims "that law enforcement officials used excessive force in the course of making an arrest . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." In light of the holding in Graham, Lee simply cannot maintain a substantive due process claim against Bevington and Moore for the excessive use of force in the course of making an arrest.

**Lee's Individual Claims**

As to the newly minted individual claim, Lee asserts a deprivation of his "due process right of companionship" with Fleming. Pl. Opp. at 11. "The problem is that no such cause of action is recognized in this circuit." Barnes v. Maryland Nat'l Capital Park and Planning Comm'n, 932 F. Supp. 691, 695 (D. Md. 1996). As the Fourth Circuit held in Shaw v. Stroud, 13 F.3d 791, 805 (4th Cir. 1994) "because the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally, we decline to sanction such a claim at the present time." Lee asks the Court to either

ignore Shaw, which it cannot, or to distinguish it on the basis that the Shaw court declined to recognize such as right "at the present time" and that "a number of other Circuits have already actually recognized such a claim." Pl. Opp. at 13-14. The rub, however, is that Fleming was 22 years old at the time of his death. (Amended Compl. ¶ 11). The Court can find no authority for the proposition that such a liberty interest is present between a parent and his adult child. Indeed, every court to have considered has concluded that no such claim exists. See e.g., Robertson v. Hecksel, 420 F.3d 1254, 1262 (11th Cir. 2005) (holding "that a parent does not have a constitutional right of companionship with an adult child"); Russ v. Watts, 414 F.3d 783, 791 (7th Cir. 2005) (rejecting a "constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action"); McCurdy v. Dodd, 352 F.3d 820, 830 (3rd Cir. 2003) ("[W]e hold that the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child."); Butera v. District of Columbia, 235 F.3d 637, 656 (D.C. Cir. 2001) ("We hold that a parent does not have a constitutionally-protected liberty interest in the companionship of a child who is past minority and independent."). Lee cites no case, and the Court can find none, that suggests otherwise. The Court finds no warrant to

11

conclude that "a parent-child relationship between two independent adults" implicates "constitutional 'companionship' interests." Butera, 235 F.3d at 656 n.23.

As an alternative, Lee argues, Moore and Bevington interfered with his right "as a father in his own home to try to persuade his son to surrender to the police." Pl. Opp. at 12. This served to "deprive [Lee] of his fundamental parental right under the Constitution to shape and direct life of his child." Id. It is not clear how this is, in fact, an "alternative" basis for recovery. Indeed, the parental rights to "companionship, care, custody and control of a child" are typically viewed as iterations of the same liberty interest. Cuevas v. City of Philadelphia, No. 05-3749, 2006 WL 2345928 at *19 (E.D. Pa. Aug. 11, 2006). Here, Lee invokes a parental "right to custody" over his independent adult son. The courts that have recognized such a claim have indicated that it is "grounded in the right to make critical child-rearing decisions." Id. at *20. Lee has no right to make such decisions for another adult. Accordingly, this alternative claim fails for the same reasons as his "companionship" claim: it simply cannot be extended to the relationship between a parent and an adult child.

**The Minor Children's Claims**

Lee also asserts a claim, on behalf of Fleming's minor children, for loss of "parental companionship and guidance." Lee

12

is correct that there is some limited credence to the notion that a direct interference with the relationship between a parent and a minor child may create a cognizable claim. These decisions find their grounding in cases that refer to a parent's right to "establish a home and bring up children," <u>Meyer v. Nebraska</u>, 242 U.S. 390, 396 (1923), or the "liberty of parents and guardians to direct the upbringing and education of children under their control." <u>Pierce v. Soc'y of Sisters</u>, 268 U.S. 510, 534-35 (1925). Curiously, the liberty interest always seems to be formed in the context of a parent's right to the companionship of and control over his child and never of a child's right to the companionship of his parent. However, the Court need not determine whether this is a difference with a distinction. The claim being asserted here is plainly foreclosed by <u>Shaw</u>.

In <u>Shaw</u>, an officer of the North Carolina Highway Patrol shot and killed an individual during the course of a traffic stop and in the presence of the man's wife and children. 13 F.3d at 794. The individual's wife and children subsequently filed an action, under § 1983, alleging, <u>inter alia</u>, that the officer was liable to the wife and children "for violating their substantive due process right to enjoy the life, love, comfort, and support of their husband and father without undue state interference." <u>Id.</u> at 796-97 (internal quotation omitted). The United States

13

Court of Appeals for the Fourth Circuit held that such a claim was not cognizable. The Court of Appeals observed that "to this date, we have not recognized such a substantive due process claim for the deceased's family." Id. at 804. The Shaw court cited approvingly to Ortiz v. Burgos, 807 F.2d 6 (1st Cir. 1986). In Ortiz, the First Circuit suggested that substantive due process claims for violations of familial rights could be divided into "direct" and "indirect" injury, id. at 8, and went on to observe that "the Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with a child." Id. In contrast, "the Court has never held that governmental action that affects the parental relationship only incidentally . . .is susceptible to challenge for a violation of due process." Id.

In Oritz, the plaintiff claimed, as does Lee here, that the unlawful death at the hands of a law enforcement officer implicated his family's liberty interest in companionship. Although Ortiz implicated the relationship between a parent and his adult child, the court noted that "the right to . . . due process has not been extended beyond settings in which the state was attempting to affect the relationship between a parent and his or her minor child." Id. at 8-9. While it is tautological to observe that Fleming's minor children were minors, the key factor here is the dearth any allegation that the officers were

14

"attempting to affect the [parent-child] relationship." This case implicates exactly the same incidental injury that was present in <u>Shaw</u> and <u>Ortiz</u> and Lee's substantive due process claim fails for the same reasons.[4]

Accordingly, the defendants' motions to dismiss Count II are granted.

## Count III

The plaintiff concedes that Count III does not state a claim for relief but, rather, states a measure of damages. <u>See</u> Pl. Br. in Opp. to Def. Moore (Docket No. 59) at 5 ("Count III does not state any cause of action."); <u>see also</u> (IPTC Tr. at 27:18-19 (Mr. Okoli: "I agree. I couldn't put it better. It's an element of a damage.")). Accordingly, the motions to dismiss Count III are granted.

### CONCLUSION

For the reasons set forth above, defendant Wesley Moore's and defendant Todd James Bevington's MOTIONS TO DISMISS AMENDED

---

[4] Lee seeks to distinguish <u>Shaw</u> by arguing: (1) that his claim for loss of "championship" differs in some respect from the claim for loss of "love and support" at issue in <u>Shaw</u>; and (2) that <u>Shaw</u> did not "foreclose[] the possibility that [the Fourth Circuit] may recognize such a claim one day." Br. in Opp. at 13. As noted above, courts have universally considered "companionship" and "love and support" to denote the same liberty interest. Further, while the Fourth Circuit has the prerogative to change its mind, it has not yet and, indeed, has reaffirmed <u>Shaw</u> quite recently. <u>See</u> <u>Cook v. Howard</u>, 484 F. App'x 805, 825 (4th Cir. 2012) (unpublished per curiam) ("We declined to sanction such a claim in <u>Shaw</u>, and we adhere to that precedent.").

COMPLAINT (Docket No. 46, 54) are granted. Counts II and III of

the Amended Complaint are dismissed. Count I is dismissed to the

extent that it alleges a claim on behalf of Lee, individually,

or on behalf of Fleming's minor children.

    It is so ORDERED.

                                   /s/         REP

                            Robert E. Payne
                            Senior United States District Judge

Richmond, Virginia
Date: March 27, 2013